# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

JAVIER GARCIA-BENGOCHEA,

      *Plaintiff*,

v.

                                Civil Action No.
                                19-cv-21725

CARNIVAL CORPORATION d/b/a CARNIVAL
CRUISE LINE, a foreign corporation,

      *Defendant*.

_____/

## CARNIVAL CORPORATION'S MOTION TO DISMISS
## THE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

**AKERMAN LLP**
  Pedro A. Freyre
  (Florida Bar No. 192140)
  98 SE 7th St., Suite 1100
  Miami, Florida 33131
  Telephone: (305) 374-5600
  Pedro.freyre@akerman.com

**JONES WALKER LLP**
  George J. Fowler, III
  (*Pro Hac Vice Application
  forthcoming*)
  201 St. Charles Ave.
  New Orleans, LA 70170
  Telephone: (504) 582-8752
  gfolwer@joneswalker.com

**BOIES SCHILLER FLEXNER LLP**
  Stuart H. Singer
  (Florida Bar No. 377325)
  Evan Ezray
  (Florida Bar No. 1008228)
  401 East Las Olas Boulevard
  Suite 1200
  Fort Lauderdale, Florida 33301
  Telephone: (954) 356-0011
  ssinger@bsfllp.com
  eezray@bsfllp.com

# **TABLE OF CONTENTS**

Page

ARGUMENT ...................................................................................................2

I.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE HE
      HAS NOT AND CANNOT PLEAD THAT CARNIVAL TRAFFICKED
      IN CUBAN-CONFISCATED PROPERTY....................................................4

      A.    Plaintiff failed to plead trafficking because it has not pled Carnival
            used property not incident to lawful travel ...........................................4

      B.    Plaintiff cannot plead trafficking because Carnival's use of the
            Santiago Docks is necessary to lawful travel to Cuba .........................6

II.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE HE
      FAILED TO PLEAD OWNERSHIP TO THE CONFISCATED
      PROPERTY ................................................................................................12

III.  PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE
      THE PROPERTY HE ALLEGES HE HAS A CLAIM TO IS NOT THE
      PROPERTY HE CLAIMS CARNIVAL TRAFFICKED IN ......................16

CONCLUSION.............................................................................................19

STATEMENT REGARDING ORAL ARGUMENT ...........................................20

CERTIFICATE OF SERVICE ...........................................................................21

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*Arko Plumbing Corp. v. Rudd*,
   13-CV-22434-UU, 2013 WL 12059615 (S.D. Fla. Sept. 26, 2013) .....................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................... 2, 15

*Ayestas v. Davis*,
   138 S. Ct. 1080 (2018) ..........................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................. *passim*

*Brown v. Regions Mortgage Corp.*,
   1:11-CV-3716-SCJ-ECS, 2012 WL 13013583 (N.D. Ga. Dec. 3, 2012) .............5

*Brown v. S. Fla. Fishing Extreme, Inc.*,
   No. 08-20678-CIV, 2008 WL 2597938 (S.D. Fla. June 27, 2008)............... 12, 15

*Bryant v. Avado Brands, Inc.*,
   187 F.3d 1271 (11th Cir. 1999) ...............................................................7

*Burnet v. Clark*,
   287 U.S. 410, (1932) ...........................................................................17

*C. I. R. v. Tellier*,
   383 U.S. 687 (1966) .............................................................................9

*Carter v. Am. Tel. & Tel. Co.*,
   365 F.2d 486 (5th Cir. 1966) .................................................................7

*Chaparro v. Carnival Corp.*,
   693 F.3d 1333 (11th Cir. 2012)..............................................................15

*Comnet Wireless, LLC v. Benning Power Elecs., Inc.*
   14-CV-3424-JLK, 2016 WL 8578007 (D. Colo. Feb. 8, 2016)............................8

*Consol. Bank, N.A., Hialeah v. U.S. Dept. of Treasury, Office of*
   *Comptroller of Currency*,
   118 F.3d 1461 (11th Cir. 1997) ...................................................................8

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,
   447 U.S. 102 (1980) .....................................................................................8

*CSX Corp. v. United States*,
   909 F.3d 366 (11th Cir. 2018) ....................................................................9

*DeMeo v. State Farm Mut. Auto. Ins. Co.*,
   639 F.3d 413 (8th Cir. 2011) .....................................................................16

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003) ...................................................................................17

*Ellis v. Warner*,
   15-10134-CIV, 2017 WL 634287 (S.D. Fla. Feb. 16, 2017) .............................13

*Empresa Cubana Exportadora de Alimentos y Productos Varios v. Us. Dept.*
   *of Treasury*,
   606 F. Supp. 2d 59 (D.D.C. 2009) .............................................................7

*F.T.C. v. Rockefeller*,
   591 F.2d 182 (2d Cir. 1979) ......................................................................9

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*,
   500 F.3d 1276 (11th Cir. 2007) ..................................................... 3, 5, 14

*Fish v. Kobach*,
   840 F.3d 710 (10th Cir. 2016) ...................................................................9

*Int'l Bhd. of Teamsters v. Zantop Air Transp. Corp.*,
   394 F.2d 36 (6th Cir. 1968) .......................................................................7

*Lewis v. Parker*,
   67 F. Supp. 3d 189 (D.D.C. 2014).............................................................13

*Martinez v. Republic of Cuba*,
   10-22095-CIV, 2011 WL 13115432 (S.D. Fla. June 27, 2011)…………...…..6, 7

*Mudge v. Stop & Shop, Inc.*,
   162 N.E.2d 670 (Mass. 1959).....................................................................10

*M'Culloch v. Maryland*,
    17 U.S. 316 (1819) ...............................................................................9

*Nat. Res. Def. Council, Inc. v. Thomas*,
    838 F.2d 1224 (D.C. Cir. 1988)..........................................................9

*Nat'l R.R. Passenger Corp. (Amtrak) v. 3.44 Acres More or Less of Land*
    *& Bldg. located at 900 2nd St. NE, Washington, DC 20002-3557*,
    266 F. Supp. 3d 63 (D.D.C. 2017)......................................................9

*Nielsen v. Sec'y of Treasury*,
    424 F.2d 833 (D.C. Cir. 1970).............................................................17

*Regan v. Wald*,
    468 U.S. 222 (1984) ...........................................................................10

*Rhode Island Hosp. Tr. Co. v. Doughton*,
    270 U.S. 69 (1926) .............................................................................17

*RJR Nabisco, Inc. v. United States*,
    955 F.2d 1457 (11th Cir. 1992)..........................................................11

*Roe v. Aware Woman Ctr. for Choice, Inc.*,
    253 F.3d 678 (11th Cir. 2001) .............................................................5

*Sw. Ga. Fin. Corp. v. Colonial Am. Cas. & Sur. Co.*,
    2009 WL 1410272 (M.D. Ga. May 19, 2009)....................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .............................................................................7

*Truck Drivers Local 807, Int'l Bhd. of Teamsters, Chauffeurs,*
    *Warehousemen & Helpers of Am. v. Carey Transp. Inc.*,
    816 F.2d 82 (2d Cir. 1987) .................................................................10

*United States v. Paulson*,
    204 F. Supp. 3d 1102 (S.D. Cal. 2016) .............................................13

*United States v. Silva*,
    443 F.3d 795 (11th Cir. 2006)............................................................13

*United States v. Tropiano*,
    418 F.2d 1069 (2d Cir. 1969) ............................................................10

*Util. Air Regulatory Group v. E.P.A.*,
   573 U.S. 302 (2014) ..................................................................................10

*Walton v. Hadley*,
   13-CV-7907 ER, 2014 WL 3585525 n.17 (S.D.N.Y. July 10, 2014) ........... 14, 15

**Statutes**

22 U.S.C. § 6021 ............................................................................................1

22 U.S.C. § 6023(13)(A) ................................................................................5

22 U.S.C. § 6023(13)(B)(iii) ................................................................ 5, 6, 11

22 U.S.C. § 6023(15)(B) ..............................................................................18

22 U.S.C. § 6081(2) ......................................................................................14

22 U.S.C. § 6081(5) ........................................................................................2

22 U.S.C. § 6082 ............................................................................................4

22 U.S.C. § 6082(4)(B) ................................................................................14

22 U.S.C. § 6082(5)(a) ................................................................................14

22 U.S.C. § 6082(a)(1)(A) ............................................................... 13, 16, 18

22 U.S.C. § 6083 ..........................................................................................13

44 U.S.C. § 1507 ............................................................................................7

50 U.S.C. § 1702(b)(4) ..................................................................................8

**Rules**

Fed. R. Evid. 201(d) ......................................................................................7

Fed. R. Civ. P. 8(a)(2) ....................................................................................2

**Regulations**

31 C.F.R. § 515.560(a) ..................................................................................1

31 C.F.R. § 515.560(c) ..................................................................................1

31 C.F.R. § 515.572(a)(1) ...........................................................................7

31 C.F.R. § 515.572(a)(2)(i) .......................................................................7

31 C.F.R. § 515.572(a)(4) ..................................................................... 7, 11

31 C.F.R. § 515.572(a)(1)-(4) .....................................................................1

*Cuban Assets Control Regulations*,
   80 FR 56915-01 ......................................................................................1

## **Other Authorities**

1 Fletcher Cyc. Corp. § 31 ........................................................................17

12B Fletcher Cyc. Corp. § 5908 ...............................................................18

141 Cong. Rec. D1225-02...........................................................................11

141 Cong. Rec. S15320-01 .........................................................................10

142 Cong. Rec. H1645-02 ..........................................................................11

H.R. Rep. 104-202(I)....................................................................................10

Treatise on the Law of Corporations § 7:2 (3d).......................................17

U.S. citizens may lawfully travel to Cuba under certain circumstances.  31 C.F.R. § 515.560(a).  When U.S. citizens choose to pursue this lawful travel to Cuba they must be transported there, and accordingly, transporting people to Cuba is also lawful.  31 C.F.R. § 515.560(c); *see also* 31 C.F.R. § 515.572(a)(1)-(4).  Indeed, in September 2015, with the goal of "engag[ing] and empower[ing] the Cuban people," the Treasury Department approved a general license, which allowed the provision of "carrier services by vessel" to Cuba.  *See* Cuban Assets Control Regulations, 80 FR 56915-01.  Under this license, Carnival Corporation ("Carnival") has lawfully offered cruises to Cuba since 2016.

Despite Carnival's Cuba cruises being authorized by the Federal Government, Plaintiff contends that, in providing cruises to Cuba, Carnival has unlawfully trafficked in the docks in Santiago, which were expropriated by the Cuban Government in the 1960s.  Plaintiff has brought suit under Title III of the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act.  *See* 22 U.S.C. § 6021, *et seq.* (either the "Act" or "Helms-Burton").  That Act, which until May 2019 had been suspended since its enactment in 1996, provides a cause of action to Americans who own claims to confiscated Cuban property against persons who "traffic" in that property.

Helms-Burton has no application here.  *First,* by its own terms, trafficking under Helms-Burton does not include uses of property "incident to lawful travel to Cuba."  But that is exactly how Carnival used the docks in Santiago de Cuba; they were a means for one of Carnival's small vessels to transport guests lawfully traveling to Cuba, which was discontinued due to shallow water clearance.  (See Argument I, below.)  *Second*, Helms-Burton requires that a plaintiff actually own a claim to the property he or she claims is being "trafficked."  Here, Plaintiff offers nothing to show that he owns a claim to the docks.  Indeed, the document he attached to the Complaint is a claim certified for someone else.  (See Argument II, below.)

1

*Third*, Helms-Burton requires the plaintiff to show that the property being trafficked is the same property that the plaintiff owns a claim to.  But here, the property Plaintiff purports to own a claim over is not the docks Carnival is allegedly trafficking in; instead, it is stock in a Cuban company that owned the docks.  Plaintiff does not—and cannot—allege that Carnival is trafficking in Cuban stock.  (See Argument III, below.)

Carnival has no doubt that millions of Cuban-Americans have suffered severe harm at the hands of their former Government.  But Helms-Burton was designed with the narrow intent to deter companies and individuals from investing in or exploiting confiscated property.  The findings in the text of the Act make clear its focus by reciting that "[t]he Cuban Government is offering foreign investors the opportunity to purchase an equity interest in, manage, or enter into joint ventures using property and assets some of which were confiscated from United States nationals."  *See* 22 U.S.C. § 6081(5).  The Act does not by its terms reach companies, such as Carnival, who are engaged in lawful travel.  Because Plaintiff's claims against Carnival fail as a matter of law, the Complaint should be dismissed with prejudice.

## **<u>ARGUMENT</u>**

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Although this standard does not require "detailed factual allegations," "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678.  Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Here Plaintiff alleges that he is a United States national and the "rightful owner" of an "82.5% interest in certain commercial waterfront real property in the Port of Santiago de Cuba." (Compl. ¶ 6.) Plaintiff claims that the Cuban Government confiscated the property in 1960. Although Plaintiff does not explain exactly what his interest is, he alleges that he has come to own a certified claim from the Foreign Claims Settlement Commission (the "Commission"), which he attached to his Complaint. (Compl. ¶ 10 & Ex. A.)[1] The Commission decision explains that Albert J. Parreno "owned 1,300 shares of stock in La Maritima, S.A., a Cuban corporation which owned and operated docks and warehouses in Santiago de Cuba, Oriente Province, Cuba." (Compl. Ex. A at 3.) The Commission noted that "La Maritima, S.A. was organized under the laws of Cuba," and therefore, it was not a "national of the United States." (*Id.*) Nonetheless, the Commission valued Mr. Parreno's "ownership interest." (*Id.*) Plaintiff does not allege why or how he came to own Mr. Parreno's claim or, for that matter, any other interest in the docks.

---

[1] The Court can consider documents attached to a Complaint on a motion to dismiss. *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

## I.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE HE HAS NOT AND CANNOT PLEAD THAT CARNIVAL TRAFFICKED IN CUBAN-CONFISCATED PROPERTY

Helms-Burton provides, among other things, a cause of action against people who traffic in the property of United States nationals that was confiscated by the Cuban government.  22 U.S.C. § 6082.  Plaintiff alleges that Carnival is now "trafficking" in the confiscated property.  (Compl. ¶¶ 12-14.)  Specifically, Plaintiff alleges that in May 2016, Carnival "knowingly and intentionally commenced, conducted, and promoted its commercial cruise line business to Cuba using the Subject Property by regularly embarking and disembarking its passengers on the Subject Property."  (Compl. ¶ 12.)  Plaintiff makes no allegations regarding whether the travel is lawful.  Plaintiff does not plead that the use of the dock is not incident to lawful travel or not necessary to the conduct of such travel.

### A.   *Plaintiff failed to plead trafficking because it has not pled Carnival used property not incident to lawful travel*

Helms-Burton provides a specific definition of trafficking:

> [A] person "traffics" in confiscated property if that person knowingly and intentionally—
>
> (i)  sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
>
> (ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or
>
> (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person,

> without the authorization of any United States national
> who holds a claim to the property.

22 U.S.C. § 6023(13)(A). The Act carves out from the definition of trafficking, "transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." 22 U.S.C. § 6023(13)(B)(iii). To plead trafficking under the Act, it is not enough to plead that a defendant was using confiscated Cuban property, a plaintiff must go a step further and plead facts stating a plausible allegation that the use of the property was not incident to lawful travel. 22 U.S.C. § 6023(13)(B)(iii).

The requirement to plead facts necessary to meet the Act's definition of trafficking is an elementary matter of pleading a statutory cause of action. To plausibly plead a claim, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282–83 (11th Cir. 2007) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001)). Courts in this Circuit have routinely required a plaintiff pursuing a statutory claim to plead facts that plausibly meet the statutory definition. *See, e.g.*, *Arko Plumbing Corp. v. Rudd,* 13-CV-22434-UU, 2013 WL 12059615, at *3 (S.D. Fla. Sept. 26, 2013) (under Computer Fraud and Abuse Act, which has a statutory definition of "damage," "pleading a type of damage within the statutory definitions is an essential element" of the claim); *Brown v. Regions Mortg. Corp.*, 1:11-CV-3716-SCJ-ECS, 2012 WL 13013583, at *3 (N.D. Ga. Dec. 3, 2012) (to state a claim under Fair Debt Collection Practices Act, a plaintiff must "allege facts showing how [the] defendant meets the statutory definition of a 'debt collector'"), *report and recommendation adopted*, 2012 WL 13013984 (N.D. Ga. Dec. 31, 2012).

Plaintiff has not pled that Carnival's use of the docks was not "incident to lawful travel to Cuba," or not "necessary to the conduct of such travel." 22 U.S.C. § 6023(13)(B)(iii). (*See* Compl. ¶ 12.) Indeed, Plaintiff's allegations suffer the same flaw as the ones that were rejected by the Supreme Court in *Twombly*. Plaintiff has alleged facts that could be consistent with trafficking—he alleges that Carnival used the docks. That is not enough. He has done nothing to allege that trafficking actually occurred—he has said nothing about whether that use was "incident to lawful travel." *See Twombly*, 550 U.S. at 557 (plaintiff does not state a claim for illegal antitrust agreement by alleging facts showing parallel conduct, plaintiff must allege facts suggesting an actual agreement). Accordingly, because Plaintiff has failed to plead any facts suggesting that Carnival "trafficked" within the meaning of the Act, the Complaint should be dismissed.

> B.    *Plaintiff cannot plead trafficking because Carnival's use of the Santiago Docks is necessary to lawful travel to Cuba*

Even if Plaintiff had attempted to plead "trafficking"—which he has not—the attempt would fail because Carnival's use of the Santiago Docks was, as a matter of law, "incident to lawful travel to Cuba," and "necessary to the conduct of such travel," and accordingly, cannot be "trafficking" as defined by Helms-Burton. 22 U.S.C. § 6023(13)(B)(iii).

*First*, all of Carnival's cruises to Cuba were "lawful travel." Plaintiff alleges that Carnival "commenced, conducted, and promoted its commercial cruise line business to Cuba" beginning in May 2016. (Compl. ¶ 12.) At that time (and today) commercial cruise travel to Cuba was lawful.

The Office of Foreign Assets Control ("OFAC"), in the Department of the Treasury, is charged with regulating travel to Cuba. *See Martinez v. Republic of Cuba*, 10-22095-CIV, 2011 WL 13115432, at *3 (S.D. Fla. June 27, 2011), *report and recommendation adopted in part, rejected in part on other grounds*, 10-22095-

CIV, 2011 WL 13115471 (S.D. Fla. Aug. 26, 2011) ("Cuba-related travel transactions by persons subject to U.S. jurisdiction are prohibited unless authorized by OFAC."). Since 2015, OFAC has granted travel providers a general license, which allowed "[p]ersons subject to U.S. jurisdiction . . . to provide travel services in connection with travel-related transactions involving Cuba authorized pursuant to this part." 31 C.F.R. § 515.572(a)(1).[2] In doing so, American companies like Carnival were "authorized to provide carrier services to, from, or within Cuba in connection with travel or transportation," 31 C.F.R. § 515.572(a)(2)(i), and when those travel or carrier services were provided by a vessel, those companies were "authorized to provide lodging services onboard such vessels to persons authorized to travel to or from Cuba pursuant to this part during the period of time the vessel is traveling to, from, or within Cuba, including when docked at a port in Cuba." 31 C.F.R. § 515.572(a)(4). Because Carnival operated under an OFAC license, the travel-related services it provided were lawful. *Martinez*, 2011 WL 13115432, at *7 ("It is undisputed that the OFAC licensed Garnishees to provide travel services to Cuba and make payments associated therewith. The assets that Plaintiff seeks to garnish have thus been authorized for transfer to Cuba and are not subject to an across-the-board prohibition on transfer."); *Empresa Cubana Exportadora de*

---

[2] "A Court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority." *Sw. Ga. Fin. Corp. v. Colonial Am. Cas. & Sur. Co.*, 2009 WL 1410272, at *1 (M.D. Ga. May 19, 2009) (quoting *Int'l Bhd. of Teamsters v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968); *see Carter v. Am. Tel. & Tel. Co.*, 365 F.2d 486, 491 (5th Cir. 1966); *see also* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed and without prejudice to any other mode of citation, may be cited by volume and page number."). The Court may consider judicially noticed federal regulations on a motion to dismiss. *See* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding."); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277-80 (11th Cir. 1999).

*Alimentos y Productos Varios v. U.S. Dept. of Treasury*, 606 F. Supp. 2d 59, 64 (D.D.C. 2009) (explaining that an OFAC general licenses, like the one Carnival operated under, "broadly authorizes entire classes of transactions").

*Second*, Carnival's use of the docks was "incident" to that "lawful travel." "Incident" means "[d]ependent on, subordinate to, arising out of, or otherwise connected with (something else, usu. of greater importance)."  INCIDENT, Black's Law Dictionary (10th ed. 2014).  Thus, a use of property is "incident to lawful travel" when the use of the property "arises out of" or is "otherwise connected with" the travel.  *Comnet Wireless, LLC v. Benning Power Elecs., Inc.*, 14-CV-3424-JLK, 2016 WL 8578007, at *2 (D. Colo. Feb. 8, 2016) (describing costs of airfare to Denver as "expenses incident to travel"); *see also* 50 U.S.C. § 1702(b)(4) (defining "transactions ordinarily incident to travel to or from any country" to include "arrangement or facilitation of such travel including nonscheduled air, sea, or land voyages").  That is precisely what Carnival's cruises use of the docks was: Carnival used the docks in connection with its Guests' travel—the docks were a means of getting the Guests to their lawful travel in Cuba.  (Compl. ¶ 12 (alleging that Carnival "regularly embark[ed] and disembark[ed] its passengers on the Subject Property").)

*Third*, Carnival's use of the docks was "necessary to the conduct of such travel." This interpretation flows from the normal meaning of the word "necessary." "[T]he starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). "As a basic rule of statutory interpretation," courts "read the statute using the normal meanings of its words."  *Consol. Bank, N.A., Hialeah v. U.S. Dept. of Treasury*, Office of Comptroller of Currency, 118 F.3d 1461, 1463 (11th Cir. 1997).

Black's Law Dictionary notes that "necessary" "may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought." *Ayestas v. Davis*, 138 S. Ct. 1080, 1093 (2018) (quoting Black's Law Dictionary 928

8

(5th ed. 1979)). That makes sense because this ordinary usage of "necessary" is frequently used in the law.  *Fish v. Kobach*, 840 F.3d 710, 734 (10th Cir. 2016) ("[C]ourts also have frequently interpreted "necessary" to mean something less than absolute necessity."); *Nat. Res. Def. Council, Inc. v. Thomas*, 838 F.2d 1224, 1236 (D.C. Cir. 1988) ("[C]ourts have frequently interpreted the word 'necessary' to mean less than absolutely essential, and have explicitly found that a measure may be 'necessary' even though acceptable alternatives have not been exhausted." (internal citations omitted)); *Nat'l R.R. Passenger Corp. (Amtrak) v. 3.44 Acres More or Less of Land & Bldg. located at 900 2nd St. NE, Washington, DC 20002-3557*, 266 F. Supp. 3d 63, 68 (D.D.C. 2017) ("[F]or centuries the law has also recognized a broader understanding of necessity that does not imply indispensability.").  For example:

- Justice Marshall famously held that "necessary" in the Necessary and Proper Clause does not require strict essentiality, but rather, requires means that are "convenient, or useful, or essential" to the end, *M'Culloch v. Maryland*, 17 U.S. 316, 413 (1819);

- A business expense is "necessary" within the meaning of the Tax Code if it is "appropriate and helpful," *C. I. R. v. Tellier*, 383 U.S. 687, 689 (1966); *accord CSX Corp. v. United States*, 909 F.3d 366, 370 (11th Cir. 2018) (Jordan, J., concurring); and

- The FTC can gather information "necessary" to its investigations in an ancillary investigation, if the need for the information "arise[s] reasonably and logically out of the main investigation."  *F.T.C. v. Rockefeller*, 591 F.2d 182, 188 (2d Cir. 1979).

Thus, as a matter of ordinary usage, when Helms-Burton says that the use of property must be "necessary" to lawful travel, it means that the use must be important, helpful, or appropriate to the conduct of lawful travel to Cuba.

Context bolsters this interpretation.  *Util. Air Regulatory Group v. E.P.A.*, 573 U.S. 302, 321 (2014) (noting that statutory interpretation must take context into account).  Helms-Burton does not require that the use of property at issue be "necessary" to "such lawful travel," rather it links necessity to "the conduct of" the travel.  In this construction, necessary usually does not mean strictly essential.  *See United States v. Tropiano*, 418 F.2d 1069, 1076 (2d Cir. 1969) (the right to solicit customers in a given area is "necessary to the conduct" of a business even though the court did not consider whether the customers were essential to the business); *Mudge v. Stop & Shop, Inc.*, 162 N.E.2d 670, 672 (Mass. 1959) (stating that grocery carts are "necessary to the conduct" of grocery stores even though the court did not consider whether customers could move goods through the store by other means).

Finally, legislative history confirms that Congress used "necessary" in its ordinary sense.  *See Truck Drivers Local 807, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Carey Transp. Inc.*, 816 F.2d 82, 89 (2d Cir. 1987) (considering legislative history to construe term "necessary").  The 1995 version of the Helms-Burton Act did not have a lawful travel carve out.  H.R. REP. NO. 104-202(I), at 5, (1995), *reprinted in* 1996 U.S.C.C.A.N. 527, 0.  In response, a number of Senators expressed concern that the Act would needlessly restrict Americans' ability to lawfully travel to Cuba.  These concerns made sense because before Helms-Burton, a number of Presidents had allowed Americans to travel to Cuba.  *See Regan v. Wald*, 468 U.S. 222, 224 (1984) (explaining that for five years OFAC allowed transactions incident to travel in Cuba).  Thus, Senator Simon offered an amendment to the Bill that aimed to protect lawful travel.  141 CONG. REC. S15320-01, S15320, 1995 WL 614999.  As he explained, Congress "should not restrict travel to any country unless security is threatened . . . ."  *Id.*  Senator Dodd echoed Senator Simon, explaining, "I think most of us believe that access and contact between peoples, particularly free people with the people who are living under a

dictatorship, has a tremendous impact, or can have a tremendous impact, to say that no one in this country to the one place throughout the entire globe could travel makes no sense at all." *Id.* Although Senator Simon's initial travel-related amendment failed, 141 CONG. REC. D1225-02, D1255, 1995 WL 615160, when Helms-Burton passed the House and the Senate in 1996, Congress had added the lawful travel carve out to the definition of trafficking. 142 CONG. REC. H1645-02, H1647, 1996 WL 90487. The Committee Report, which "next to the statute itself it is the most persuasive evidence of congressional intent," *RJR Nabisco, Inc. v. United States*, 955 F.2d 1457, 1462 (11th Cir. 1992), explains that the reason for adding the lawful travel carve-out was to "remove[] any liability for . . . any activities related to lawful travel." 142 CONG. REC. H1645-02 at H1656. The Committee Report thus makes clear that, consistent with the text of the carve-out, Helms-Burton is not meant to reach uses of property involved in lawful travel to Cuba.

This is consistent with Helms-Burton having been adopted with the intent of deterring foreign investors from purchasing or otherwise exploiting property that was wrongfully confiscated by the Cuban government with the hopes that cutting off this lucrative source of foreign investment would put pressure on the government to reform. However, the Act was never intended to punish or deter lawful travel to Cuba, and thus Congress specifically exempted lawful travel from the reach of the Act. 22 U.S.C. § 6023(13)(B)(iii).

This Court can determine that as a matter of law Carnival's use of the docks was necessary to the conduct of lawful travel. Quite simply, the use of a dock is important, helpful, and appropriate, for sea travel to Cuba. Indeed, the OFAC regulations specifically contemplate that a dock will be used when a vessel travels to Cuba, allowing a vessel operator to provide lodging services, "including *when docked at a port in Cuba*." 31 C.F.R. § 515.572(a)(4). As Plaintiff itself alleges,

docks are important to cruise travel because that is where passengers "embark[] and disembark[]."  (Compl. ¶ 12.)

Accordingly, because Carnival's use of the docks was necessary for, and incident to, lawful travel to Cuba, Plaintiff cannot plead that Carnival "trafficked," and the case should be dismissed with prejudice.

## II.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE HE FAILED TO PLEAD OWNERSHIP TO THE CONFISCATED PROPERTY

Plaintiff's claim also must be dismissed because he has failed to adequately plead sufficient facts to demonstrate that he owns a claim to the Santiago docks. Plaintiff instead makes only conclusory allegations of ownership in his pleading, allegations that are undermined by the documents Plaintiff attached to his own Complaint.  Because Plaintiff must show, and ultimately prove, ownership to the allegedly confiscated property, his failure to do so warrants dismissal.

Plaintiff merely alleges that his is the "rightful owner" to a portion of the Santiago docks.  (Compl. ¶ 6.)  But Plaintiff's conclusory allegation of ownership is insufficient because the document attached to the Complaint as well as judicially-filed documents in the public record undermine Plaintiff's claim.  *Brown v. S. Fla. Fishing Extreme, Inc.*, No. 08-20678-CIV, 2008 WL 2597938, at *2 (S.D. Fla. June 27, 2008) (looking to public documents to determine ownership).  The claim Plaintiff attached to his Complaint is not in his own name; it was owned by Albert J. Parreno. (Compl. Ex. A.).  Thus, to own the claim, Plaintiff would have needed to acquire it from Mr. Parreno.  For this reason, when this same Plaintiff previously brought suit under Helms-Burton, he alleged that he "inherited an interest in said property from his cousin, Alberto J. Parreno, who died in 1972."  *See* Complaint, *Bengochea v. China Communications Construction Company*, No. 3:17-cv-00137-BJD-JBT, at

¶ 8.  That allegation is not true.  Mr. Parreno's probated will, which this Court can consider on a motion to dismiss,[3] provides:

> I give, devise and bequeath to my said brother, DESIDERIO PARRENO, all my rights to and under property held by me which has been confiscated by the Fidel Castro regime in Cuba, including, but not limited to, my shares in La Maritima S.A., Terminal Saviera S.A. and Molinera Oriental S.A. (all Cuban corporations) and my interest in real estate located in Cuba.

(See Declaration of Corey P. Gray in Support of Carnival's Motion to Dismiss, Exhibit A ¶ FIFTH.)  The publicly available documents thus offer no way to link the claim Plaintiff is bringing to the Plaintiff.[4]  Accordingly, without any allegations of ownership, and with the public record contradicting that claim, Plaintiff's Complaint must be dismissed.

Helms-Burton only provides a cause of action to United States nationals who "who own[] the claim" to confiscated property.  22 U.S.C. § 6082(a)(1)(A).  The plain language of the Act makes clear that ownership is a fundamental element of a claim under the Act.  *See United States v. Silva*, 443 F.3d 795, 798 (11th Cir. 2006).  Indeed, the Act itself recognizes that a plaintiff must prove ownership and provides intricate rules for doing so.  *See* 22 U.S.C. § 6083 (titled "Proof of ownership of claims to confiscated property").  And the Congressional findings in support of Title III emphasize ownership: "The wrongful confiscation or taking of property

---

[3] *Ellis v. Warner*, 15-10134-CIV, 2017 WL 634287, at *3 n.3 (S.D. Fla. Feb. 16, 2017) (considering probated will on a motion to dismiss because "[c]ourts may take judicial notice of publicly filed documents. . . at the Rule 12(b)(6) stage."); *United States v. Paulson*, 204 F. Supp. 3d 1102, 1108 (S.D. Cal. 2016) (same); *Lewis v. Parker*, 67 F. Supp. 3d 189, 195 n.6 (D.D.C. 2014) (same).

[4] On this point, we note that Albert Parreno's claim passed to his brother Desiderio Parreno. Desiderio appears to have passed away in 2000 in Costa Rica.  *See* Memorial, Desiderio Xavier Parreno '38, *available at* https://paw.princeton.edu/memorial/desiderio-xavier-parreno-%E2%80%9938.  Thus, if Plaintiff traces his title to Desiderio's will, he would have acquired the claim too late to bring suit.

*belonging to* United States nationals by the Cuban Government, and the subsequent exploitation of this property at the expense of the *rightful owner* . . . ." 22 U.S.C. § 6081(2) (emphasis added).  Thus, to plead a Helms-Burton claim, a plaintiff must allege facts demonstrating ownership.  *Stephens, Inc.*, 500 F.3d at 1282–83 (to survive a motion to dismiss plaintiff must allege facts supporting all "material elements" of their claim).

Beyond making sense as a matter of general pleading, requiring a plaintiff to plead ownership makes particular sense in the Helms-Burton context because the Act places limits on which types of owners can bring claims.  Specifically, Helms-Burton provides that if a plaintiff, like Plaintiff here, seeks to sue on property confiscated before 1996, the plaintiff must have "acquire[d] ownership of the claim before March 12, 1996."  22 U.S.C. § 6082(4)(B).  Moreover, Helms-Burton provides that if a person, "was eligible to file a claim with the Foreign Claims Settlement Commission . . . but did not so file the claim," then that person "may not bring an action on that claim under this section."  22 U.S.C. § 6082(5)(a).  Only if a plaintiff pleads ownership at the outset can a defendant test the legal sufficiency of that "owner" bringing claims.

When ownership is an essential element of a claim, courts have been clear that to state a claim, a plaintiff must allege facts supporting ownership.  For example, in *Walton v. Hadley*, 13-CV-7907 ER, 2014 WL 3585525, at *4 n.17 (S.D.N.Y. July 10, 2014), the counter-claim plaintiff alleged that he was the owner of a "valuable piece of fine artwork," which had been sold by the counter-claim defendant.  *Id.* at *1.  The counter-claim plaintiff brought suit, seeking to quiet title of the artwork and for the sale proceeds to be released to him.  *Id.* at *2.  The court dismissed the counterclaim for failure to plead ownership.  *Id.* at *4.  As the Court explained:

> [I]n cases involving stolen artwork, it may be difficult for
> the true owner to come forward with much by way of

> factual support for his ownership claims.   That said,
> *Twombly* and *Iqbal* make clear that a plaintiff or
> counterclaimant must satisfy the plausibility standard
> before being permitted to take discovery.  Thus, [Counter-
> claim Plaintiff's] argument that his conclusory assertion of
> ownership is enough to move the case beyond the pleading
> stage is unavailing.

*Id.* at *4 n.17.  Compelling reasons require a plausible allegation of ownership before a suit proceeds.  As the *Walton* Court explained, without a plausible allegation of ownership, a plaintiff could "assert an ownership claim against anyone" based only on "loose speculation."  *Id.* at *4.

Similarly, in *Brown v. S. Fla. Fishing Extreme, Inc.*, the plaintiff failed to state a cause of action because he failed to sufficiently plead ownership.  2008 WL 2597938, at *2.  There, the plaintiff made "conclusory alleg[ations]" that he was "the owner of the copyrights at issue."  *Id.*  The Court did not accept the "conclusory allegations."  *Id.*  Instead, it dismissed the claim because documents attached to the Complaint and in the public record demonstrated that the Plaintiff did not own the copyright.  *Id.*

So too here, Plaintiff's only allegation of ownership is that he is the "rightful owner" of the Subject Property.  (Compl. ¶ 6.)  He does nothing more; for example, he does not allege, when, how, or from whom he acquired ownership.  Without any facts, Plaintiff's conclusory allegation is insufficient to establish ownership.  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth."); *Brown*, 2008 WL 2597938, at *2 (discounting conclusory allegations of ownership).

15

### III.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE THE PROPERTY HE ALLEGES HE HAS A CLAIM TO IS NOT THE PROPERTY HE CLAIMS CARNIVAL TRAFFICKED IN

Even if Plaintiff had pleaded "trafficking" and "ownership" his claims should be dismissed because Plaintiff has not alleged that Carnival "trafficked" in the property he owned.  Helms-Burton requires that a plaintiff show that the property being trafficked is the same property the plaintiff owns a claim to.  This requirement flows directly from the language of the Act.  Again, the cause of action in Helms-Burton provides that "any person that . . . *traffics in property* which was confiscated by the Cuban Government on or after January 1, 1959, *shall be liable to any United States national who owns the claim to such property* for money damages . . . ."  22 U.S.C. § 6082 (a)(1)(A) (emphases added).  The section refers to property twice: *first*, it requires a person to traffic in property which was confiscated by the Cuban Government and *second* it requires a United States national to "own[] the claim to *such* property."  "Such" means "of the type previously mentioned."  *DeMeo v. State Farm Mut. Auto. Ins. Co.*, 639 F.3d 413, 416 (8th Cir. 2011).  Thus, when Helms-Burton refers to owning a claim to "such property," it is referring to the property previously mentioned; that is, the trafficked property.  Accordingly, to state a claim under Helms-Burton a plaintiff must allege that he or she owns a claim to the precise property being trafficked.

Plaintiff's claim falters on that obligation because the property he allegedly owns is not the docks Carnival is allegedly trafficking in.  Plaintiff claims to own "an 82.5% interest in certain commercial waterfront real property in the Port of Santiago de Cuba identified specifically by the Republic of Cuba as La Maritima and Terminal Naviera."  (Compl. ¶ 6.)  In support, Plaintiff affixed a certified Foreign Claims Settlement Commission decision to his Complaint.  The certified claim, however, makes clear that Plaintiff does not own a direct interest in the

waterfront property.  (Compl. Ex. A at 2-3.)  Instead, the claim concerns stock in a Cuban company, which in turn owned the docks.  (*Id.*)  As the Commission explained, it was "La Maritima, S.A.," and not Albert Perreno "which owned and operated docks and warehouses in Santiago de Cuba."  (Compl. Ex. A at 3.)

Plaintiff does not allege that Carnival is trafficking in La Maritima stock, and thus, his claim must fail because he has not alleged that he owns a claim to the property being trafficked.  Plaintiff cannot cure the deficiency because, for two independent reasons, he has no way to plausibly claim an ownership interest in the claim to the docks.

*First*, as a shareholder, Albert Parreno (and Plaintiff himself because his claim, to the extent he has one, is derived from Mr. Parreno's) cannot claim rights in underlying corporate assets.  It is well-established that "[a] corporation and its stockholders are generally to be treated as separate entitles."  *Burnet v. Clark*, 287 U.S. 410, 415, (1932).  Elementary corporate law holds that "[t]he owner of the shares of stock in a company is not the owner of the corporation's property." *Rhode Island Hosp. Tr. Co. v. Doughton*, 270 U.S. 69, 81 (1926); *accord Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets."); James D. Cox & Thomas Lee Hazen, Treatise on the Law of Corporations § 7:2 (3d) ("Corporate property is owned by the corporation as a distinct legal person; its shareholders have only an indirect interest in the assets and business."); 1 Fletcher Cyc. Corp. § 31 (rev. ed. 1999) ("The property of the corporation is its property and not that of the shareholders as owners.").  This analysis has been applied to pre-Revolution Cuban companies. *See Nielsen v. Sec'y of Treasury,* 424 F.2d 833, 841 (D.C. Cir. 1970) (looking to pre-Castro Cuban law and noting that the corporation, not the shareholders, owned corporate property).  Indeed, for this reason, when Mr. Parreno brought a claim for the property he lost to Cuban nationalization, the Commission

17

did not attempt to value the Santiago docks (after all Mr. Parreno did not own the docks) but rather valued the "ownership interest" in La Maritima, S.A.. (Compl. Ex. A at 3.)

The same is true here. However Plaintiff frames his claim, at most he owns a claim to stock in a Cuban company that owned the Santiago docks. As a matter of corporate law, Plaintiff does not own a claim to the docks themselves. Accordingly, Plaintiff cannot bring a claim related to Carnival's alleged trafficking in the docks. 22 U.S.C. § 6082(a)(1)(A).

*Second*, Plaintiff cannot bring a claim on behalf of La Maritima because the company is not a United States national capable of bringing a Helms-Burton claim. Helms-Burton only allows United States nationals to bring suit.  22 U.S.C. § 6082(a)(1)(A). But here, as the Commission explained, La Maritima, S.A. was not (and is not) a United States national. (Compl. Ex. A at 3 ("Since La Maritima, S.A. was organized under the laws of Cuba, it does not qualify as a corporate "national of the United States[.]").) *See also*, 22 U.S.C. § 6023(15)(B) (defining United States National as "any other legal entity which is organized under the laws of the United States, or of any State, the District of Columbia, or any commonwealth, territory, or possession of the United States, and which has its principal place of business in the United States."). Accordingly, La Maritima cannot bring a Helms-Burton claim.[5]

Thus, because Plaintiff cannot plausibly assert a claim of ownership over the property he claims Carnival is trafficking in, Plaintiffs' Complaint must be dismissed with prejudice.

---

[5] Bringing the claim derivatively on behalf of La Maritima would not solve this problem because derivative claims are brought in the name of the corporation, 12B Fletcher Cyc. Corp. § 5908, and here the corporation cannot bring the claim.

## **CONCLUSION**

For the foregoing reasons, Carnival respectfully requests that the Court dismiss Plaintiff's claim with prejudice.

Dated: May 30, 2019                              Respectfully submitted,

By: *s/ Stuart H. Singer*

Pedro A. Freyre                                      Stuart H. Singer
AKERMAN LLP                                     (Florida Bar No. 377325)
(Florida Bar No. 192140)                      Evan Ezray
98 SE 7th St., Suite 1100                       (Florida Bar No. 1008228)
Miami, Florida 33131                            BOIES SCHILLER FLEXNER LLP
Telephone: (305) 374-5600                     401 East Las Olas Boulevard
Pedro.freyre@akerman.com                   Suite 1200
                                                             Fort Lauderdale, Florida 33301
George J. Fowler, III                            Telephone: (954) 356-0011
JONES WALKER LLP                            ssinger@bsfllp.com
(*Pro Hac Vice Application*                    eezray@bsfllp.com
*forthcoming*)
201 St. Charles Ave.
New Orleans, LA 70170
Telephone: (504) 582-8752
gfolwer@joneswalker.com


*Attorneys for Carnival Corporation*

19

## STATEMENT REGARDING ORAL ARGUMENT

This is the first case brought under Helms Burton.  Carnival believes oral argument may be helpful to the Court in resolving the issues raised in this motion to dismiss.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served

on all counsel of record via the court's CM/ECF System on May 30, 2019.

By:*/s/ Stuart H.Singer*
Stuart H. Singer, Esq.