UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:19-cv-21725-JLK

JAVIER GARCIA-BENGOCHEA,

      Plaintiff,

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE,

      Defendant.

_____/

## ORDER DENYING CARNIVAL CORPORATION'S MOTION TO DISMISS

THIS MATTER is before the Court on Defendant Carnival Corporation's Motion to Dismiss, filed May 30, 2019 (DE 14). The Court has also considered Plaintiff's Response in Opposition (DE 24), and Carnival's Reply Brief (DE 27). In addition, the Court heard oral argument on the Motion on July 31, 2019.

## I. BACKGROUND

**A.      The Helms-Burton Act**

On March 12, 1996, Congress passed the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, 22 U.S.C. §§ 6021–6091, commonly referred to as the "Helms-Burton Act." In addition to strengthening international sanctions against the Cuban Government, under Helms-Burton, Congress sought to "protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro regime." 22 U.S.C. § 6022(6). According to Congress's findings, "'trafficking' in confiscated property provides badly needed financial benefit . . . to the Cuban Government and thus undermines the foreign policy of

the United States," including "protect[ing] claims of United States nationals who had property wrongfully confiscated by the Cuban Government." *Id.* § 6081(6)(B). "To deter trafficking," Congress found that "the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures." *Id.* § 6081(11).

To that end, Congress created a private right of action against any person who "traffics" in confiscated Cuban property. *See id.* § 6082(a)(1)(A); *id.* § 6023(13)(A) (defining "traffics"). Specifically, under Title III of the Act, "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property for money damages." *Id.* § 6082(a)(1)(A).[1]

Shortly after Helms-Burton was passed, however, the President invoked Title III's waiver provision, and "Title III has since been waived every six months, . . . and has never effectively been applied." *Odebrecht Const., Inc. v. Prasad*, 876 F. Supp. 2d 1305, 1312 (S.D. Fla. 2012). That changed on April 17, 2019, when the U.S. Department of State announced that the federal government "will no longer suspend Title III." *See* U.S. Department of State, Secretary of State Michael R. Pompeo's Remarks to the Press (Apr. 17, 2019), https://www.state.gov/remarks-to-the-press-11/. As a result, Title III became effective for the first time on May 2, 2019 (which Carnival does not dispute).

**B.  This Case**

That same day, Plaintiff Javier Garcia-Bengochea filed this "trafficking" action under Helms-Burton. Plaintiff alleges that he is the "rightful owner of an 82.5% interest in certain

---

[1] The Act lists the amount of money damages available under Title III as the greater of: (a) the amount certified by the Foreign Claims Settlement Commission under the International Claims Settlement Act of 1949, (b) the amount determined by a special master pursuant to § 6083(a)(2), or (c) the fair market value of the property. *See id.* § 6082(a)(1)(A)(i).

commercial waterfront real property in the Port of Santiago de Cuba." *See* Compl. ¶ 6, DE 1.[2]
The Complaint alleges that in October 1960, "the communist Cuban Government nationalized, expropriated, and seized ownership and control of the Subject Property." *Id.* ¶¶ 7–8. At the time, the property was owned and operated by a Cuban corporation named La Maritima, S.A., which was also nationalized by the Cuban Government in 1960. *Id.*, Ex. A. Plaintiff claims that Carnival "trafficked" in the confiscated property when it "commenced, conducted, and promoted its commercial cruise line business to Cuba using the Subject Property by regularly embarking and disembarking its passengers on the Subject Property." *Id.* ¶ 12. Plaintiff therefore seeks money damages against Carnival pursuant to Title III of Helms-Burton.

## C.      Carnival's Motion to Dismiss

On May 30, 2019, Carnival moved to dismiss Plaintiff's Complaint for failure to state a claim. *See* Mot. Dismiss, DE 14. Carnival makes three arguments in support of dismissal. First, Carnival claims this action is barred by the "lawful travel" exception to "trafficking." *See id.* at 12 (citing § 6023(13)(B)(iii)). According to Carnival, "[t]o plead trafficking under the Act, it is not enough to plead that a defendant was using confiscated Cuban property," but rather, "a plaintiff must go a step further and plead . . . that the use of the property was not incident [or necessary] to lawful travel." *Id.* Because Plaintiff does not plead these facts (and because Carnival claims its use of the docks was both incident and necessary to lawful travel in any event), Carnival argues that the Complaint should be dismissed with prejudice. *See id.* at 13, 19.

Second, Carnival argues that Plaintiff alleges in conclusory fashion that he is the "rightful owner" of the claim to the property, which Carnival contends is "undermined by the documents

---

[2] According to the Complaint, 32.5% of Plaintiff's ownership interest is based upon a certified claim issued by the Foreign Claims Settlement Commission, which is attached as an exhibit to the Complaint. *Id.* ¶ 10, Ex. A. The "remaining portion of Plaintiff's interest in the Subject Property is based upon an uncertified claim." *Id.* ¶ 11.

Plaintiff attached to his own Complaint." *Id.* at 19. Specifically, Carnival notes that the certified claim attached to the Complaint "is not in [Plaintiff's] own name," but "was owned by Albert J. Parreno," a non-party to this litigation. *Id.*

Third, Carnival argues that even if Plaintiff did acquire ownership of Parreno's certified claim, Plaintiff still does not own a "direct interest" in the confiscated property because "the claim concerns stock in [La Maritima], which in turn owned the docks." *Id.* at 17. In Carnival's view, this requires dismissal because, "[a]s a matter of corporate law, Plaintiff does not own a claim to the docks themselves." *Id.* at 18. And because La Maritima "is not a United States national capable of bringing a Helms-Burton claim," Carnival says Plaintiff cannot save his case by attempting to bring the action on behalf of the company. *Id.*

### D.   Plaintiff's Response

On June 24, 2019, Plaintiff filed his Response to the Motion to Dismiss. *See* Pl.'s Resp., DE 24. As to trafficking, Plaintiff argues that the "lawful travel" exception is an affirmative defense to liability under the Act and therefore need not be refuted or negated in the Complaint to state a claim. *See id.* at 5. Plaintiff contends that the Complaint adequately alleges Carnival trafficked within the meaning of Helms-Burton by using the docks for its commercial cruise line business. *See id.* at 4.

With respect to Carnival's arguments on Plaintiff's ownership of a claim to the property, Plaintiff's principal response is that Carnival "conflates [] an ownership interest in the confiscated *property* with ownership of a *claim* to such property." *Id.* at 17. According to Plaintiff, because Congress "used 'clear and unambiguous language' to denote its claim-specific view of Title III," a plaintiff need only allege "ownership of a claim," not ownership of the property itself. *Id.* And here, Plaintiff argues, the four corners of the Complaint sufficiently

allege that he owns a claim to an 82.5% interest in the property. *See id.* at 23. Finally, Plaintiff argues that dismissal is not warranted just because his certified claim is to stock in the Cuban corporation that owned and operated the docks when they were confiscated.

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1169 (11th Cir. 2014).

## III. DISCUSSION

### A. Plaintiff Need Not Negate the Lawful Travel Defense in the Complaint to State a Trafficking Claim Under Helms-Burton

As an initial matter, the Court disagrees with Carnival's argument that the Complaint should be dismissed because Plaintiff did not plead around the lawful travel defense. "[A]n affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters." *VP Props. & Devs., LLLP v. Seneca Specialty Ins. Co.*, 645 F. App'x 912, 916 (11th Cir. 2016) (internal quotation marks and citation omitted). The burden of establishing an affirmative defense rests with the defendant— the "one who claims its benefits." *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 93 (2008). "The touchstone for determining the burden of proof under a statutory cause of action is the statute itself." *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.*, 525 F.3d 1107, 1110 (11th Cir. 2008). While the "ordinary default rule [is] that plaintiffs

5

bear the risk of failing to prove their claims," the burden is properly placed on the defendant when certain issues "can fairly be characterized as affirmative defenses or exemptions." *Id.* For instance, when a statute "exempt[s] otherwise illegal conduct by reference to a further item of proof," this strongly suggests that Congress intended to create an affirmative defense. *See Meacham*, 554 U.S. at 93.

Based on the text and structure of Helms-Burton, the Court holds that the lawful travel exception is an affirmative defense to trafficking that must be established by Carnival, not negated by Plaintiff. As noted above, Helms-Burton creates a cause of action against any person who "traffics" in confiscated Cuban property. *See* § 6082(a)(1)(A). The Act defines "traffics" as follows:

> (A) As used in subchapter III, and except as provided in subparagraph (B), a person 'traffics' in confiscated property if that person knowingly and intentionally--
>
> > (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
> >
> > (ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or
> >
> > (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person, . . . .

*Id.* § 6023(13)(A). The phrase "except as provided in subparagraph (B)" is where the lawful travel provision comes in. Under subparagraph (B), trafficking "does not include transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." *Id.* § 6023(13)(B).

By using the phrase "except as provided in subparagraph (B)" immediately before describing the conduct that constitutes trafficking, Congress expressed a clear intent to make the

travel provision an *exception* to unlawful trafficking.  Moreover, because this statutory exception requires proof of new facts (*i.e.*, conduct that was "incident" and "necessary" to "lawful travel"), it fits the mold of a traditional affirmative defense that raises "new allegations of excuse, justification, or other negating matters." *VP Props. & Devs., LLLP*, 645 F. App'x at 916.[3]

While Carnival attempts to analogize to case law interpreting the Driver's Privacy Protection Act ("DPPA") and the Fair Debt Collection Practices Act ("FDCPA"), the Court is not persuaded.  Carnival relies primarily on the Eleventh Circuit's decision in *Thomas*, 525 F.3d at 1112.  *See* Reply at 5–6.  In that case, the court held that the DPPA required the plaintiff to show that his personal information was obtained "for a purpose not permitted" by the statute, rejecting the plaintiff's argument that the "permissible uses listed [in the statute] function as statutory exceptions" and should be viewed as affirmative defenses. *Thomas*, 525 F.3d at 1112. But the DPPA is unique, because even though it prohibits obtaining a driver's personal information "for a purpose not permitted," the statute only describes the purposes that *are permitted*. *See id.* at 1110–12.  As such, the Eleventh Circuit concluded, a plaintiff must establish a negative by showing that the defendant's purpose was *not* among those permitted by the statute. *See id.*  By contrast, the Helms-Burton Act explains exactly what does and does not constitute unlawful trafficking. *Compare* § 6023(13)(A) *with* § 6023(13)(B).  Thus, unlike the DPPA, Helms-Burton frames the travel provision as an exception to otherwise unlawful conduct, not as lawful conduct that must be negated by the plaintiff to state a claim.

---

[3] Carnival relies on the legislative history to suggest that Congress intended otherwise, but the legislative history actually cuts against Carnival's argument.  Carnival relies on language from the Committee Report stating that the lawful travel provision was intended to "remove any liability for any activities related to lawful travel." *See* Mot. Dismiss at 18 (quoting 142 CONG. REC. H1645-02 at H1656) (brackets and ellipses omitted).  But to *remove* liability presupposes that liability would otherwise exist absent the exception.  Thus, the legislative history cited by Carnival only reinforces the conclusion that this is an affirmative defense.

In addition, Carnival attempts to analogize to the FDCPA, and relies on *Benjamin v. CitiMortgage, Inc.*, No. 12-62291, 2013 WL 1891284, at *3 (S.D. Fla. May 6, 2013) (finding that the plaintiff failed to plead that the defendant was a "debt collector" under the FDCPA because the statute excludes certain persons from the definition of "debt collector" and the complaint did not allege facts negating that exclusion). But Carnival cites no Eleventh Circuit cases interpreting the FDCPA in this manner, and the Court finds *Benjamin* unpersuasive on this point because the court did not explain its reasoning for placing the burden on the plaintiff to negate an exclusion to "debt collector" status.

Nor is the Court persuaded by Carnival's argument that dismissal is appropriate because the lawful travel defense is "apparent on the face" of the Complaint. *See* Reply at 9. Under Rule 12(b)(6), a complaint may be dismissed based on an affirmative defense only where the defense "clearly appears on the face of the complaint." *See Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd and reinstated on reh'g,* 764 F.2d 1400 (11th Cir. 1985) (en banc). This occurs when a complaint includes "matters of avoidance that preclude the pleader's ability to recover," *id.*, or when "the allegations in the complaint suffice to establish [the] ground" for the defense, *Jones v. Bock*, 549 U.S. 199, 215 (2007). This is not such a case. The allegations in the Complaint do not on their face indicate—much less establish—that Carnival's use of the docks was "incident" and "necessary" to "lawful travel" to Cuba. Indeed, Carnival's argument regarding the lawfulness of its travel to Cuba rests on a document wholly outside the four corners of the Complaint: a license purportedly issued by the Office of Foreign Assets Control authorizing common carriers to engage in such services. *See* Mot. Dismiss at 13–15. As such, the lawful travel defense cannot form the basis for dismissal under Rule 12(b)(6).[4]

---

[4] Carnival goes on to argue that its use of the docks was necessary to lawful travel, claiming that "necessary" should be construed to simply mean "important, helpful, or appropriate," rather than

**B.      Plaintiff Sufficiently Alleges Ownership of the Claim to the Property**

The Helms-Burton Act also requires the plaintiff to show that he "owns the claim" to the confiscated property. *See* § 6082(a)(1)(A). In its Motion to Dismiss, Carnival argues that the Complaint is fatally flawed because the certified claim attached to the Complaint is not in Plaintiff's name, and there are no allegations showing that Plaintiff owns that claim.

The Court respectfully disagrees. The Complaint adequately alleges that Plaintiff owns an 82.5% interest in the Santiago docks, that 32.5% of that interest is based upon the certified claim attached to the Complaint, and that the remaining portion of Plaintiff's interest is based upon an uncertified claim. *See* Compl. ¶¶ 10–11. In any event, Plaintiff's ownership of the claim involves factual determinations that go beyond the four corners of the Complaint, as demonstrated by Carnival attaching a purported copy of Mr. Parreno's probated will to show that Plaintiff did not inherit the claim. *See* Mot. Dismiss at 13, Ex. A. Such factual determinations are "inappropriate in deciding a motion to dismiss." *Twin City Fire Ins. Co. v. Hartman, Simons & Wood. LLP*, 609 F. App'x 972, 977 (11th Cir. 2015).

The Court also disagrees with Carnival's argument that Plaintiff's alleged ownership is contradicted by the certified claim attached to the Complaint. "When the exhibits attached to the complaint contradict the general and conclusory allegations of the pleading, the exhibits govern." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1245 (11th Cir. 2016) (quoting *Griffin Indust., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)) (brackets and internal quotation marks omitted). But this rule requires dismissal only "if the exhibits 'plainly show' that the complaint's allegations are untrue by providing 'specific factual details' that 'foreclose recovery

---

essential or indispensable. *Id.* at 15–19. Given the Court's holding that this is an affirmative defense that is not properly considered on a motion to dismiss, the Court need not reach the merits of Carnival's argument at this stage.

as a matter of law.'" *Id.* (quoting *Griffin Indust., Inc.*, 496 F.3d at 1205–06).  Here, nothing in

the certified claim attached to the Complaint plainly shows that Plaintiff's allegations are untrue.

*See* Compl. Ex. A, DE 1-1 at 12.  The claim is dated September 16, 1970, leaving ample time for

Plaintiff to have acquired ownership of the claim from Mr. Parreno (or his successor) prior to

bringing this action.  While the Complaint does not explain what occurred between 1970 and

today, the Court cannot use this silence to assume that Plaintiff did *not* acquire the claim during

that period or that Plaintiff's allegations of ownership are untrue.  *See Twin City Fire Ins. Co.*,

609 F. App'x at 977 ("The complaint's silence regarding what might or might not have happened

between 2010 and 2013 did not give the district court license to assume that Twin City had failed

to take certain actions during that period.").[5]  In any event, Plaintiff also alleges that a portion of

his interest is based on an *uncertified claim*, which is not contradicted by any exhibits.  Thus,

Plaintiff adequately alleges that he owns a claim to the confiscated property and those allegations

are not foreclosed by the exhibit to the Complaint.

**C.    Plaintiff Plausibly Alleges a Claim to the Confiscated Property Based on Stock Ownership in La Maritima**

Finally, under Helms-Burton, the plaintiff's claim must be a claim "*to the [confiscated]

property.*"  § 6082(a)(1)(A) (emphasis added).  Citing the corporate law principle that a

corporation and its stockholders are generally treated as separate entities, Carnival argues that

---

[5] For this reason, Carnival's reliance on *Brown v. South Florida Fishing Extreme, Inc.*, No. 08-20678, 2008 WL 2597938, at *1 (S.D. Fla. June 27, 2008) (Gold, J.), is misplaced. *Brown* is a copyright infringement case where the plaintiff claimed to be the owner of copyrighted music. *Id.* at *2.  In dismissing the complaint, the court explained that despite the plaintiff's conclusory allegation that he owned the copyrights at issue, the exhibits to the complaint (and the certificates of registration from the U.S. Copyright Office) established that the copyrights were owned by an entity named Serious Music, Inc., not the plaintiff. *See id.*  Here, Plaintiff has asserted sufficient factual allegations supporting his ownership interest, and the certified claim attached to the Complaint merely reflects that Mr. Parreno owned the claim in 1970—not today.

Plaintiff's claim is not a "claim to the confiscated property" because it merely "concerns stock in a Cuban company, which in turn owned the docks." Mot. Dismiss at 17. In other words, Carnival contends that this action must be dismissed because, as a matter of corporate law, Plaintiff does not own a "direct interest" in the confiscated property. *Id.* at 17–18.

The Court is not persuaded. Based on the text, context, and purpose of Helms-Burton, Plaintiff plausibly alleges a claim to the confiscated property based on his stock ownership in La Maritima. Beginning with the text, because the Act does not define the term "claim," the Court looks to the term's ordinary meaning at the time Helms-Burton was passed. *See Sumpter v. Sec'y of Labor*, 763 F.3d 1292, 1296 (11th Cir. 2014). Based on contemporary dictionary definitions, Congress would have understood that a *claim* to confiscated property is substantially broader than a *direct interest* in such property. *See, e.g.*, *Webster's New World College Dictionary* 257 (3d ed. 1996) (defining "claim" as "a demand for something rightfully or allegedly due" or "a right or title to something"); *Merriam-Webster's Collegiate Dictionary* 210 (10th ed. 1993) (defining "claim" as "a demand for something due or believed to be due," "a right to something," or "an assertion open to challenge").

Similarly, there is no indication in the statute's text that Congress was legislating with corporate formalities in mind. Instead, Congress used the broadly understood term "claim," combined with colloquial language such as the "rightful owners" and "victims of these confiscations" in the congressional findings, §§ 6081(8), (11). This counsels against using corporate law to confine Helms-Burton. *Cf. Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) (applying corporate law principles to Foreign Sovereign Immunities Act because Congress used language such as "shares" and "separate legal person," indicating that "Congress

had corporate formalities in mind" and "was aware of settled principles of corporate law and legislated within that context").

This broader reading also comports with basic canons of statutory interpretation. One such canon is that courts are "not allowed to add or subtract words from a statute." *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1224 (11th Cir. 2009). Indeed, "one of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Patel v. U.S. Att'y Gen.*, 917 F.3d 1319, 1326 n.5 (11th Cir. 2019) (quoting *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 824 (2018)). Here, however, Carnival's reading of the statute would require the Court to delete the word "claim" from the phrase "owns the claim to such property," and effectively rewrite Helms-Burton to cover only those plaintiffs who "own such property." In other words, Carnival's interpretation would render the word "claim" entirely superfluous, which also weighs heavily against Carnival's argument.

Another canon of construction is that related statutes, or statutes *in pari materia*, "are to be interpreted together, as though they were one law." *See In re Coffman*, 766 F.3d 1246, 1250 (11th Cir. 2014) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 252–53 (2012)). Thus, the Court looks to the closely related International Claims Settlement Act of 1949 for additional guidance. There, Congress specified that "claims" against the governments of Cuba or China may be based on property "owned wholly or partially, directly *or indirectly* by a national of the United States on the date of the loss." 22 U.S.C. § 1643c(a) (emphasis added). This added context further indicates that a "claim" under Helms-Burton need not be based on direct property ownership as Carnival contends, but instead embraces *indirect* ownership as well. And here, Plaintiff plausibly alleges indirect ownership based on his claim to

stock in La Maritima, the company that owned the docks before it was nationalized by the Cuban Government in October 1960.  *See* Compl. ¶¶ 7–8, Ex. A.

Finally, Carnival's reading of the statute would substantially undermine Congress's goal of deterring trafficking.  *See* § 6081(11).  Indeed, under Carnival's interpretation, one can traffic in a Cuban corporation's confiscated property with impunity as long as the Cuban Government not only took the property, but also nationalized the corporate entity itself, leaving only the individual shareholders behind to pursue any rights the corporation might have lost to the Castro regime.  And because the Act applies to confiscations dating back to January 1959, there is a strong possibility that many of these corporations no longer exist or are otherwise unable to assert claims on their own behalf.  In fact, in this case, Carnival argues that La Maritima is not a U.S. national capable of bringing a Helms-Burton claim for the confiscated docks, and according to Carnival, that means *no one* is.  The Court finds it implausible that Congress intended such a result.

## IV.  CONCLUSION

Accordingly, it is **ORDERED, ADJUDGED, AND DECREED** that Defendant Carnival Corporation's Motion to Dismiss **(DE 14)** be, and the same hereby is, **DENIED**.  Defendant shall file its Answer to the Complaint within twenty (20) days from the date of this Order.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 26th day of August, 2019.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record

13