**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO.: 19-cv-21725-KING**

JAVIER GARCIA-BENGOCHEA,

    Plaintiff,

v.

CARNIVAL CORPORATION d/b/a/ CARNIVAL
CRUISE LINE, a foreign corporation,

    Defendant.
_____/

**CARNIVAL CORPORATION'S MOTION FOR CERTIFICATION FOR
<u>INTERLOCUTORY APPEAL</u>**

| | |
|---|---|
| **JONES WALKER LLP** | **BOIES SCHILLER FLEXNER LLP** |
| George J. Fowler, III | Stuart H. Singer |
| (*Pro Hac Vice*) | (Florida Bar No. 377325) |
| Luis Llamas | Evan Ezray |
| (Florida Bar No. 89822) | (Florida Bar No. 1008228) |
| 201 St. Charles Ave. | 401 East Las Olas Boulevard, Suite 1200 |
| New Orleans, LA 70170 | Fort Lauderdale, Florida 33301 |
| Telephone: (504) 582-8752 | Telephone: (954) 356-0011 |
| gfowler@joneswalker.com | ssinger@bsfllp.com |
| llamas@joneswalker.com | eezray@bsfllp.com |

## INTRODUCTION

This is a textbook case for Section 1292(b) certification. Plaintiff brought among the first ever suits under the Helms-Burton Act. 22 U.S.C. § 6021 *et seq.* Plaintiff's Complaint required the Court to disregard normal principles of corporate law and hold that under Helms-Burton a plaintiff can make a claim not only for his or her own assets but also for the assets of a foreign corporation for which he or she was a shareholder. The Court's order finding that Bengochea can make a claim for the subject property, despite the undisputed fact that this property was owned by La Maritima, S.A., a Cuban entity, was not only unprecedented as to corporate law, but it was also the first ever direct judicial treatment of Helms-Burton. Carnival respectfully requests this Court amend its August 26, 2019 Order to certify this discrete issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Allowing for an interlocutory appeal here would allow the Court of Appeals to answer this threshold legal question at the outset and potentially avoid the expenditure of further resources by the Court and the parties. Accordingly, certification is proper.

## BACKGROUND

Plaintiff alleged that he was the "rightful owner" to certain waterfront property in Santiago, Cuba. (Compl. ¶ 6.) Plaintiff pleaded that a portion of his "ownership interest . . . ha[d] been certified by the Foreign Claims Settlement Commission," and attached a copy of that certification as Exhibit A to his Complaint. (Compl. ¶ 10 & Ex. A.) The attached claim certification clarified Plaintiff's ownership interest. In evaluating and certifying the attached claim (which was owned at the time by Albert J. Parreno), the Foreign Claims Settlement Commission ("FCSC") found that Mr. Parreno was a shareholder of a Cuban Company—La Maritima, S.A.—and that La Maritima was the actual owner of the waterfront property. (Compl. Ex. A (ECF No. 1-1) at 3).) The FCSC recognized Mr. Parreno's ability to recover the value of his stock in La Maritima, S.A., and

specifically noted that La Maritima S.A., did not have standing to make a claim due to its Cuban citizenship, citing to longstanding FCSC precedent. (Compl. Ex. A (ECF No. 1-1) at 4.)

On May 30, 2019, Carnival filed a Motion to Dismiss the Complaint. Carnival argued that Plaintiff could not state a claim based on allegations that Carnival used the waterfront property in Santiago because La Maritima S.A., not the Plaintiff, owned any claim related to the confiscation of its corporate property, that shareholders do not have the ability to assert a claim for loss of corporate property, and that La Maritima S.A., is a Cuban corporation, and therefore, is not eligible to bring a claim under the Act. The Court denied Carnival's motion to dismiss. In its Order, the Court ruled that Bengochea could assert a claim to the Santiago docks even though the docks were owned by a Cuban corporation at the time of confiscation and Bengochea's only connection to the docks was through his allegedly inherited share ownership. (ECF No. 41, pp. 10-13.)

## ARGUMENT

Section 1292(b) is designed to facilitate interlocutory appeals when immediate "appeal may avoid protracted and expensive litigation . . . [and] where a question which would be dispositive of the litigation is raised and there is serious doubt as to how it should be decided." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004) (quoting 1958 U.S.C.C.A.N. 5255, 5260-61). Accordingly, Section 1292(b) allows a district court to certify an issue for interlocutory appeal when: (1) the challenged ruling involves controlling questions of law, (2) there is substantial ground for difference of opinion on the ruling, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Although certification of an order under § 1292(b) is discretionary, it is "the duty of the district court . . . to allow an immediate appeal to be taken when the statutory criteria [in § 1292(b)] are met." *Ahrenholz v. Bd. of Tr. of the Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000).

Here, all three factors support certification.

**I.     THE CHALLENGED RULING INVOLVES A CONTROLLING QUESTION OF LAW**

"A 'controlling question of law' arises where the court of appeals can rule on a controlling question of pure law without having to search deep into the record in order to discern the facts." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, 13-CIV-80371, 2015 WL 11251735, at *2 (S.D. Fla. July 8, 2015). For example, a "controlling question of law" often involves determining "the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *McFarlin*, 381 F.3d at 1258 (quoting *Ahrenholz*, 219 F.3d at 676).

The Eleventh Circuit has explained that a controlling question of law may be established by showing the challenged ruling is "directly associated with the disposition of at least a claim, if not the entire case itself." *Harris v. Luckey*, 918 F.2d 888, 892 (11th Cir. 1990); *see also Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs.*, 86 F.3d 656, 659 (7th Cir. 1996) ("A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so."); 16 Charles Alan Wright and Arthur R. Miller, *Federal Practice & Procedure*, §3930, (3d. ed.) ("There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment.").

Here, the controlling question of law is whether Helms-Burton, contrary to normal principles of corporate law, gives a plaintiff a "claim" to property when the plaintiff's relationship to that property is that he or she owned shares (or traces ownership of the claim to someone who owned shares) in a corporation that owned the property, and that corporation is a Cuban corporation. That question raises a purely legal issue about the proper interpretation of the Helms-Burton Act, which is case dispositive. *See Mamani v. Berzain*, 825 F.3d 1304, 1312-13 (11th Cir. 2016) (Section 1292(b) appeal in the Rule 12(b)(6) context is appropriate when the legal issue is a pure or abstract question of law). When the parties raise dispositive questions about the meaning

3

of a statute, courts have little trouble concluding that the issue is a "controlling question of law." *United States ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242, 1251 (10th Cir. 2017); *see also Dial v. Healthspring of Ala., Inc.*, 612 F. Supp. 2d 1205, 1207 (S.D. Ala. 2007) (noting that the "controlling question of law" requirement is met when the resolution of the issue "requires an interpretation of the meaning of a statute").

## II. SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION EXIST ON WHETHER HELMS-BURTON FOLLOWS NORMAL PRINCIPLES OF CORPORATE LAW IN DETERMINING CLAIM OWNERSHIP

"Courts traditionally will find that a substantial ground for difference of opinion exists where novel and difficult questions of first impression are presented." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). In making that determination, "[t]he level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case." Wright et al., *Federal Practice & Procedure* § 3930. Accordingly, where, as here, "proceedings that threaten to endure for several years depend on an initial question of jurisdiction, limitations, or the like, certification may be justified at a relatively low threshold of doubt." *Id.*

This is one of the first cases ever brought under Helms-Burton. Courts frequently grant Section 1292(b) motions to allow appellate courts to resolve difficult issues of first impression. *Laperriere v. Vesta Insurance Group, Inc.*, 526 F.3d 715, 719 (11th Cir. 2008) (per curiam); *Adams v. Florida Power Corp.*, 255 F.3d 1322, 1322 (11th Cir. 2001); *Reese*, 643 F.3d at 688; *Mamani v. Berzain*, 07-22459, 2014 WL 12689038, at *3 (S.D. Fla. Aug. 18, 2014) (certifying question of first impression); *Solutia Inc. v. McWane, Inc.*, CV 03-PWG-1345-E, 2008 WL 11337774, at *1 (N.D. Ala. June 25, 2008) (finding substantial grounds for difference of opinion when "[n]either the Supreme Court nor the Eleventh Circuit Court of Appeals has answered this question").

4

Here there are two different views that could be followed as to whether traditional rules of corporate form apply to Helms-Burton.  Carnival has argued that Bengochea does not have a claim to the Santiago Docks because under corporate law "[t]he owner of the shares of stock in a company is not the owner of the corporation's property." *Rhode Island Hosp. Tr. Co. v. Doughton*, 270 U.S. 69, 81 (1926); *accord Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets[.]"); *United States v. Wallach*, 935 F.2d 445, 462 (2d Cir. 1991) ("[S]hareholders do not hold legal title to any of the corporation's assets. Instead, the corporation—the entity itself—is vested with the title."); James D. Cox & Thomas Lee Hazen, Treatise on the Law of Corporations § 7:2 (3d) ("Corporate property is owned by the corporation as a distinct legal person; its shareholders have only an indirect interest in the assets and business."); 1 Fletcher Cyc. Corp. § 31 (rev. ed. 1999) ("The property of the corporation is its property and not that of the shareholders as owners."). For this reason, shareholders cannot bring claims in their own name asserting the loss or diminution in value of corporate assets.  *Cook v. Trinity Universal Ins. Co. of Kan.*, 297 F. App'x 911, 913 (11th Cir. 2008) ("[A]n action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation" (quoting *Stevens v. Lowder*, 643 F.2d 1078, 1080 (5th Cir. Unit B Apr. 1981)); *Chrystall v. Serden Techs.*, 913 F. Supp. 2d 1341, 1361 (S.D. Fla. 2012) (suits alleging "company-wide monetary harms" like "devaluation of stock or damages resulting from a sale of assets at an unreasonable price" must be asserted derivatively in the name of the corporation); *see also EMI Ltd. v. Bennett*, 738 F.2d 994, 997 (9th Cir. 1984) ("Generally, a shareholder does not have standing to redress an injury to the corporation in which it holds stock."); 12B Fletcher Cyc. Corp. § 5924 ("In general a shareholder cannot sue as an individual to recover corporate assets.").  This type analysis has been

5

applied to pre-Revolution Cuban companies. *See Nielsen v. Sec'y of Treasury,* 424 F.2d 833, 841 (D.C. Cir. 1970) (looking to pre-Castro Cuban law and noting that the corporation, not the shareholders, owned corporate property). Accordingly, applying normal corporate law principles, a shareholder would have no right to "claim" corporate property under Helms-Burton.[1]

The Court rejected this view finding that Helms-Burton does not follow such corporate formalities: "[b]ased on contemporary dictionary definitions, Congress would have understood that a claim to confiscated property is substantially broader than a direct interest in such property." (Slip. op. at 11.) The Court stated that Congress was not "legislating with corporate formalities in mind." (Slip. Op. at 11.)

There is room for reasonable disagreement over the first impression issue of who can bring a claim for corporate property under Helms-Burton. The Supreme Court has required Congress to speak clearly when it intends to abrogate "venerable common-law" principles of corporate form. *United States v. Bestfoods*, 524 U.S. 51, 62-63 (1998) (concluding that nothing in CERCLA was intended to reject the corporate law principle that a corporation is not liable for the acts of its subsidiaries). When Congress intends "to disregard structural ownership rules" "it knows how to do so[.]" *Dole Food Co.*, 538 U.S. at 476. For example, "various federal statutes refer to 'direct and indirect ownership.'" *Id.* This type of language—instructing Courts to look at indirect ownership—alerts the judiciary that Congress intends to move beyond normal corporate law

---

[1] Moreover, here no shareholder derivative claim would lie because this case has not been brought as a derivative action and because La Maritima, S.A., as a Cuban Corporation, is ineligible to bring a claim under Helms-Burton, as only a U.S. National can pursue claims. 22 U.S.C.§ 6082(a)(1)(A). Here, the Parreno family likely created La Maritima, S.A., for several reasons, including limitation of liability, tax benefits, flexibility in raising capital etc. The reasons these benefits exist is because under the law a corporation is viewed as a separate juridical entity capable of owning assets in its own name. James D. Cox & Thomas Lee Hazen, Treatise on the Law of Corporations § 7:2 (3d). Accordingly, while the individual enjoys the benefits of incorporation he also accepts the reality that he no longer owns the assets of the business post-incorporation, the corporation does.

conceptions of ownership. *Id.* But Helms-Burton has none of this kind of "indirect ownership" language.

The Court also reasoned that Carnival's reading erases the word "claim" from the statute. (Slip. Op. at 12.) Carnival agrees that a shareholder whose shares were seized by the Castro regime owns a claim against the Cuban government for the value of those shares. However, a claim to shares *is not the same thing as a claim to underlying corporate assets*. This reading does not read "claim" out of the statute, rather it insists—as do normal principles of corporate law—that a corporation pursue claims for the loss of its property and a shareholder pursue claims for his or her own losses. *See Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) ("When (or if) the portion of Title III that allows private litigants to bring lawsuits becomes effective, actions brought pursuant to the new statutory scheme would be actions brought 'on a claim to *the confiscated property'* against traffickers *in the property*." (emphasis added)). The Court further stated that Carnival's interpretation would "effectively rewrite Helms-Burton to cover only those plaintiffs who 'own such property." (Slip. Op. at 12.) Respectfully, that is simply not the case. Carnival recognizes that after confiscation by the Cuban government, a claimant no longer owns legal title to his or her property. *Glen v. Club Mediterranee, S.A.*, 365 F. Supp. 2d 1263, 1269-70 (S.D. Fla. 2005). Recognizing a Helms-Burton plaintiff would no longer own legal title to the property as a result of the expropriation, the statute calls for the plaintiff to have a "claim" to such property. But that does not mean that prior ownership is irrelevant; instead, the analysis is whether the plaintiff would be the owner of the property, but for the expropriation. *See Glen*, 450 F.3d at 1255 ("The Helms–Burton Act refers to the property interest that former owners of confiscated property now have as ownership of a 'claim to such property.'"). Here, Bengochea never owned

7

the subject docks, they were owned by La Maritima, S.A., prior to expropriation, and therefore, he cannot have a claim to the docks.

Looking beyond Helms-Burton's text, this Court found that Helms-Burton would likely allow a shareholder to pursue a trafficker in an underlying corporate asset by reading the statute *in pari materia* with the International Claims Settlement Act of 1949. But that Act, unlike Helms-Burton, uses typical language abrogating consideration of corporate form, 22 U.S.C. § 1643b (allowing claims by direct and indirect owners). Helms-Burton has none of this language, which "instructs [] that Congress did not intend to disregard structural ownership rules[.]" *Dole Food Co.*, 538 U.S.at 476.

Moreover, in this case, the FCSC respected corporate formalities, holding a claim for the value of the docks in Santiago could not be made because La Maritima, S.A., a Cuban entity, was the owner, and thus, not a proper claimant.  As the FCSC explained:

> *Since La Maritma, S.A. was organized under the laws of Cuba, it does not qualify as a corporate 'national of the United States' defined under Section 502 (1)(B) of the Act* as a corporation or other legal entity organized under the laws of the United States, or any State, the District of Columbia, or the Commonwealth of Puerto Rico, whose ownership is vested to the extent of 50 per centum or more in natural  persons who are citizens of the United States. *In this type of situation, it has been held that an American stockholder is entitled to file a claim for the value of his ownership interest.*

(Compl. Ex. A (ECF No. 1-1) at 4 (emphasis added).) Under Helms-Burton's scheme, the FCSC's findings in this regard deserve significant deference because: "In any action brought under this subchapter, *the court shall accept as conclusive proof of ownership of an interest in property a certification of a claim to ownership of that interest that has been made by the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949.*" 22 U.S.C. § 6083; *see also* 22 U.S.C. § 6082(a)(5)(B) ("In the case of any action brought under this

8

section by a United States national whose underlying claim in the action was timely filed with the Foreign Claims Settlement Commission under title V of the International Claims Settlement Act of 1949 *but was denied by the Commission, the court shall accept the findings of the Commission on the claim as conclusive in the action under this section*." (emphasis added)). Thus, like Parreno, Bengochea should not be able to bring a claim for the assets owned by La Maritima, S.A.

Finally, this Court reasoned that Helms-Burton's goal was to deter trafficking (Slip Op. at 13), and that Carnival's reading would undermine that goal because, for claims held by Cuban companies, no one could assert a claim for trafficking. 22 U.S.C. § 6082(a)(1)(A) (only U.S. Nationals can pursue claims). (*See also* Slip Op. at 13.) But Congress itself recognized that some pieces of confiscated property would not be subject to Helms-Burton claims because they were owned by non-United States nationals. Nonetheless, Congress declined to allow foreigners to bring Helms-Burton suits. 22 U.S.C. § 6082(a)(1)(A).

Whether or not the Court's view is correct that Congress intended the Act to not be bound by normal principles of when corporate shareholders can bring claims, it is clear that this is the type of issue that would benefit from early appellate review. *Mamani*, 2014 WL 12689038 at *2 (certifying question when "there is no case law directly on point and that there are substantial grounds for disagreement as to how the . . . provision should be interpreted"); *see also McFarlin*, 381 F.3d at 1258 (substantial grounds for disagreement exist when appeal relates to the correctness of district court application of law and reasoning); *Lipton v. Documation, Inc.*, 590 F. Supp. 290, 291–92 (M.D. Fla. 1982), *aff'd*, 734 F.2d 740 (11th Cir. 1984) (finding substantial ground for difference of opinion on scope of application of legal theory); *Mamani v. Berzain*, 07-22459-CIV, 2010 WL 11442696, at *2 (S.D. Fla. Mar. 17, 2010) (Jordan, J.) (finding substantial question when "there are no cases directly on point, and there are substantial grounds for disagreement");

9

*Washburn v. Beverly Enterprises-Georgia, Inc.*, CV 106-051, 2007 WL 9700927, at *1 (S.D. Ga. Jan. 8, 2007) (finding factor met when party raised "substantial questions" about order).

### III.  IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS LITIGATION

There is little doubt that an immediate appeal will "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), because such resolution "would serve to avoid a trial or otherwise substantially shorten the litigation," *McFarlin*, 381 F.3d at 1259. If the Court is correct, then the Eleventh Circuit will have endorsed its expansive view of the Act, clarifying threshold questions about the scope of Helms-Burton for the benefit of not only the parties to this case, but other similarly situated claimants. If the Court of Appeals decides the question presented here in Carnival's favor, then that determination would "dispose of the entire case." *Washburn*, 2007 WL 9700927 at *1 (decision on an issue can materially advance litigation if it would avoid trial); *In re Pacific Forest Products*, 335 B.R. 910, 924 (S.D. Fla. 2005). Further, "[t]his case will involve extensive and lengthy international discovery," which could be avoided by an immediate appeal. *Mamani*, 2010 WL 11442696 at *3. By potentially avoiding this costly process, an appeal will advance the litigation. *See In re Managed Care Litigation*, 2002 WL 1359736, *1 (S.D. Fla. 2002) (certification of immediate appeal order based on "extent to which additional time and expense may be saved by the appeal").

### CONCLUSION

Carnival respectfully requests that the Court amend its August 26, 2019, Order to certify it for interlocutory appeal.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), counsel for Carnival certifies that he has conferred with opposing counsel, and Plaintiff opposes the relief sought herein.

Dated: September 5, 2019    Respectfully submitted,

By: *s/ Stuart H. Singer*

| | |
|---|---|
| George J. Fowler, III | Stuart H. Singer |
| (*pro hac vice*) | (Florida Bar No. 377325) |
| Luis Llamas | Evan Ezray |
| (Florida Bar No. 89822) | (Florida Bar No. 1008228) |
| JONES WALKER LLP | BOIES SCHILLER FLEXNER LLP |
| 201 St. Charles Ave. | 401 East Las Olas Boulevard, Suite 1200 |
| New Orleans, LA 70170 | Fort Lauderdale, Florida 33301 |
| Telephone: (504) 582-8752 | Telephone: (954) 356-0011 |
| gfolwer@joneswalker.com | ssinger@bsfllp.com |
| llamas@joneswalker.com | eezray@bsfllp.com |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record via the court's CM/ECF System on September 5, 2019.

By:*/s/ Stuart H. Singer*

11